The WESTERN COMPANY OF NORTH AMERICA, Appellant,

v.

David C. GRIDER, Appellee.

No. 18507.

Court of Appeals of Texas,
Fort Worth.

Jan. 7, 1982.

Rehearing Denied Feb. 4, 1982.

Fillmore & Camp and H. Dustin Fillmore, Richard L. Scheer, Harris, Finley, Creel & Bogle and Bill F. Bogle, Fort Worth, for appellant.

Barlow, Gardner, Tucker & Garsek and Terry Gardner, James B. Barlow, Simon, Peebles, Haskell, Gardner & Betty and Anne Gardner, Cantey, Hanger, Gooch, Munn & Collins and Rod M. Patterson, Fort Worth, for intervenors.

Before MASSEY, C. J., and SPURLOCK and HOLMAN, JJ.

## OPINION

SPURLOCK, Justice.

David C. Grider, plaintiff, brought suit against Western Company of North America for personal injuries which he sustained when struck by a high pressure hose being used by Western Company's employees in its flushing operation of a gas well. Grider sued Western Company on the basis of negligence. Both Grider and Western Company were sub-contractors for Jerry Walker, owner of the well, on whose premises the injury occurred. Of certain importance is that Grider did not sue either Walker or Richard Phinney, Walker's geologist and well operator charged with the responsibility of overseeing the drilling and completion of the well. From a verdict and judgment in favor of Grider, Western Company appeals.

We reverse and remand.

Facts are without dispute. Grider, as co-owner and crew member of Mule's Well Service, was at the well site along with the employees of Western Company to perform duties for which they had been hired. Mule's Well Service was hired to "swab" the well; however, when it attempted to do so, it was discovered that this operation could not be completed until the well had been flushed. Western Company was hired to flush the well, performance of which involved the circulation of water under pressure down the annulus, i.e. the space between the casing and hole, up through the casing and out through a hose into a sludge pit.

The hose through which the water was pumped from the well into the sludge pit was a flexible high pressure hose approximately thirty feet long. Western Company had a rule of procedure by which its employees were instructed to install a stalk (a rigid tube) on the end of the flexible hose through which the discharged water containing the foreign matter was carried to the sludge pit. Western Company's employees knew of the company rule, but on this occasion did not attach a stalk. Consequently, when an unexpected surge of pressure suddenly hit the hose, the end of the hose began to thrash about wildly hitting Grider, throwing him into the sludge pit and seriously injuring him.

Grider sued Western Company alleging several acts or omissions by its employees as constituting negligence. Western Company answered with a general denial and specially pleaded unavoidable accident and that its employees were "borrowed servants" of Walker.

Texas Employers Insurance Association, the carrier of workers' compensation insurance for Grider's company, intervened to recover the amounts it had paid Grider in benefits.

The case was tried to a jury which found Western Company to be negligent and Grider to have sustained damages in the amount of $304,000.00. The trial court overruled Western Company's motion for judgment non obstante veredicto and rendered judgment in favor of Grider for $290,072.25 and in favor of Texas Employers' for $13,927.75, the latter amount having been stipulated.

Western Company appeals asserting twenty points of error; however, we will address its thirteenth and fourteenth points first as we find these dispositive in this case. Western Company contends that the trial court erred in excluding as "hearsay" the testimony of Bobby Cumbie and Stephen Folkner, both members of Western's crew, to the effect that the "company man" (Richard Phinney as the agent and employee of Walker) had said that the stalk would not be necessary.

For clarity, it must be noted that Richard Phinney, Walker's geologist and operator, is referred to as the "company man". Cumbie, Folkner, and Phinney did not appear at trial.

As applied to the failure to install the stalk, Western Company deemed it important to introduce certain testimony in depositions on file and available for purposes of trial, but was denied the opportunity to do so. The depositions were those of its own employees, Cumbie and Folkner, who had been present at the well site. The portions of their depositions desired to be introduced were those in which both had made statements to the effect that Folkner had been told by the "company man" that the attachment of a stalk would not be necessary, and that their failure to attach it was because of their obedience to him. It is obvious that the evidence, if admissible, would go to the matter of Western Company's defense that its employees were the borrowed servants of the company for whom Phinney was agent and also to the issue of the negligence of Western Company.

Grider objected to the excerpted testimony on the grounds that it was "hearsay" and that it was so highly prejudicial that an instruction to the jury would not cure the prejudicial effect. Western Company argued that the proffered testimony was not hearsay because it was not offered to prove

the truth of the statement made, but to prove that the statement was made and thereby to explain the conduct of those who relied on it. Grider's objections were sustained and the proffered testimony excluded even as applied to the limited purpose for which it was tendered.

■ The hearsay rule applies to an assertion made out of court by non-parties when evidence of the assertion is offered for the purpose of proving the truth of the matter asserted. If, however, evidence of an extra-judicial utterance is offered, not as an assertion to evidence the truth of the matter asserted, but without reference to the truth of the matter asserted, the hearsay rule does not apply. *O'Connor v. National Motor Club of Texas, Inc.*, 385 S.W.2d 558, 561 (Tex.Civ.App.—Houston 1964, no writ). Note that in this case there was limitation of the purpose for which the evidence was offered.

According to Ray, Texas Practice, Law of Evidence sec. 799 (1980) the hearsay rule is not applicable in the following situation:

"Communications made or received by a person will often be relevant not as evidencing that the facts are as stated in the communication but as tending to show the knowledge, or belief of the person who communicated the statement or the one who received it. Particularly, the knowledge or belief of a litigant at a *decisive moment is often a component of* his cause of action or ground of defense. Proof of this element through evidence of statements made out of court has been attempted for a variety of purposes. Such statements are consistently received if they would tend to induce or indicate a belief material to the case. For example, a party may introduce statements made by or to him that throw light on what he knew or believed for the purpose of exonerating himself when charged with . . . negligence. . ."

■ The hearsay rule does not bar testimony that a particular statement was made to the witness by another if the very making of the statement, instead of its truth or falsity, is the fact in issue. Moreover, where the fact in issue is whether a party acted prudently or in good faith, the information on which he acted, without regard to its truth or falsity, is not inadmissible as hearsay. 24 Tex.Jur.2d Evidence, sec. 560 (1961).

The Texas Supreme Court enunciated the "information acted on" rule in *McAfee v. Travis Gas Corporation*, 137 Tex. 314, 153 S.W.2d 442, 448 (1941). There the court stated:

"As already shown, on the occasion of this explosion Joe Woods appeared on the premises of Federal Petroleum Company and had a conversation with McAfee. Immediately after such conversation McAfee went with Woods to this leaky pipe line, and was in the act of pointing out to Woods such leaks when Woods struck the match which caused this explosion. At the trial McAfee proposed to prove that on the occasion in question Woods said that he was an employee of the people who owned the pipe line and asked McAfee to show him the place where the leaks were. The trial court excluded such testimony. We think this was error."

After holding that declarations of an agent on the subject of agency are admissible in corroboration of other independent evidence of agency, the court held:

"There is another reson why we think that the statements above detailed, made by Joe Woods to McAfee just prior to this accident, were admissible. It was charged by the defendant that McAfee was guilty of contributory negligence in knowingly going into this place of danger. Such a charge raised the issue as to whether or not McAfee, under the surrounding circumstances, acted as a reasonably prudent person would have acted in showing the leaks in this pipe line to Woods. In such a case the information, whether true or false, on which McAfee acted at the time, was admissible as original and material evidence bearing on the question of contributory negligence. *Jones on Evidence, Civil Cases*, 3d Ed., pp. 526, 527, sec. 330; *McGowen v.*

*McGowen*, 52 Tex. 657; 17 Tex.Jur. p. 614, sec. 257. We quote the rule as announced in *Jones on Evidence, supra*:

'Where the question is whether a party has acted prudently, wisely, or in good faith, the information on which he acted, whether true or false, is original and material evidence, and not hearsay.' "

See also *Globe Discount City v. Landry*, 590 S.W.2d 813, 815 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.); *Allstate Insurance Company v. Godwin*, 426 S.W.2d 652, 654 (Tex.Civ.App.—Houston [1st Dist.] 1968, no writ); *Texas Employers' Ins. Ass'n v. McDonald*, 238 S.W.2d 817, 820 (Tex.Civ.App.—Austin 1951, writ ref'd).

█ Just as the excluded testimony in *McAfee* was not hearsay and was relevant and material evidence on the issue of whether McAfee acted negligently on that occasion and therefore was competent evidence, so also in the instant case, we hold the excluded testimony of Cumbie and Folkner is not hearsay and is material and relevant on the issue of whether Western Company's employees acted negligently on this occasion.

If we err in so holding, then we hold that by the situation posed and explained in discussion to follow that an exception to the hearsay rule existed whereby the evidence was admissible and was erroneously excluded.

For exclusion of evidence to constitute reversible error, the exclusion must be such that it was reasonably calculated to cause and probably did cause rendition of an improper judgment. Tex.R.Civ.P. 434. Reviewing the record as a whole, we find that the court's error in excluding the deposition testimony met these requirements. The evidence excluded did have a direct and substantial bearing upon the issue of Western Company's negligence and, though in lesser respect, also on Western Company's "borrowed servant" defense. The error here was compounded by repeated references in the jury argument made by Grider's attorney to the fact that no testimony had been admitted that the company had told West-

ern Company's employees not to use a stalk. For example, Grider's attorney argued:

"The policy was to put on a metal stalk. Do you really imagine, can you even conceive that for a procedure that took 30 seconds that the company man would tell The Western Company, the experts, how to go about doing their job? . . ."

\* \* \* \* \* \*

"Finally, and perhaps more importantly, there is not one syllable of testimony in this record that anyone told the Western crew how to lay its hose. There is not one syllable of testimony in this record that anyone instructed the Western Company people not to put a stalk on the end of that hose."

\* \* \* \* \* \*

"I repeat, there is not one whit of testimony that the Western Company was instructed by anyone to violate its own policy of safety and not put a stalk on that hose."

\* \* \* \* \* \*

"Is there any evidence before you in this record, and there is none, that anyone told any person at The Western Company not to put on the stalk?"

\* \* \* \* \* \*

"There is no evidence in this record that anyone told any employee of The Western Company not to put that stalk on there."

\* \* \* \* \* \*

After each such reference, Western Company's counsel promptly objected and requested that the case be reopened in order that Western Company might again tender the excluded testimony. Each time Western Company's objection and request were overruled.

For Grider's counsel to argue inferring that Western Company had no evidence that the company man or anyone else had told the Western crew not to put the stalk on the end of the hose after obtaining a ruling of the court in exclusion of that very testimony smacks of unfair trial. That

such was the result in this case was fortified by the court's action overruling the objections to the argument without any explanation to the jury. For Grider's counsel to seek before the jury to punish The Western Company counsel for being unsuccessful in presenting available evidence, admissible or not, when opportunity to present it was by reason of his own objection to its admissibility, constitutes an improper use of the court's prior ruling on admissibility.

For these reasons, we reverse and remand this case for new trial.

We have considered Western Company's eighteen other points of error and overrule each one.

Reversed and remanded.